453 So.2d 1037 (1984)
Mary Virginia KNEBEL
v.
CITY OF BILOXI and Civil Service Commission.
No. 54996.
Supreme Court of Mississippi.
August 8, 1984.
Charles T. Sykes, Jr., Gulfport, for appellant.
Michael B. McDermott, Page, Mannino & Peresich, Biloxi, for appellees.
Before WALKER, P.J., and BOWLING and HAWKINS, JJ.
HAWKINS, Justice, for the Court:
Mary Virginia Knebel appeals from a judgment of the Circuit Court of the Second Judicial District of Harrison County, upholding the Civil Service Commission of the City of Biloxi in approving her discharge as a city patrolman.
The issue before us is the right of a police department under certain circumstances to order an employee to take a polygraph test, the refusal of which authorizes the department to discharge the employee.
We hold the facts of this case justified such order and affirm.
On Tuesday, June 29, 1982, the Narcotics Units of the Biloxi Police Department was in the process of searching a residence and making arrests of two female occupants. Knebel, driving her private automobile, and accompanied by Pat Blanchard, a police dispatcher, stopped. She asked Officer Richard L. Giraud what he was doing there, prompting the response from the latter of what she was doing there. Knebel either said she was visiting friends, or there to pick up a friend. Giraud then asked her if it was the house he pointed to (the house being searched), and she said it was. Whereupon Giraud told her that her friend had been "busted", and again upon inquiry from Knebel, he said it was for a narcotics violation. Knebel's curiosity persisted, what kind of violation? The reply: marijuana. Felony or misdemeanor? Felony. Knebel then said she had better leave, and she drove off with Blanchard.
Upon being questioned, the women in the house told the officer that Knebel had upon occasion visited the house, had purchased marijuana, and had smoked it in the house.
Giraud reported this to his superior which resulted in a department investigation. The Director of Public Safety of the Biloxi Police Department, Giraud's superior, directed an administrative investigation, but no criminal proceeding. Thereafter, upon being questioned, Knebel said the two occupants of the house were friends, but she denied she had bought or used any marijuana. When asked if she would take a polygraph test, she said she would have to consult an attorney.
Officer Blanchard admitted when she was questioned she had been to the house and had one time seen some marijuana. Blanchard refused outright the request to take a polygraph test.
Knebel was told the investigation was administrative, not criminal, and nothing she said would be used against her in a criminal proceeding.
A few days later Knebel reported to Director Lower that she would not take a polygraph test. She was ordered to take one, and upon her refusal, she was suspended.
A departmental hearing was conducted, resulting in a vote of three-to-two to discharge her. Knebel appealed to the city's civil service commission, which upheld her termination. She then appealed to the Circuit *1039 Court, and from the adverse decision of that court she has appealed.
There were in effect regulations of the city which require that under certain circumstances an employee may be directed to take a polygraph test, and refusal to do so will constitute ground for discharge. The reason the officer gave for her discharge was "insubordination", the refusal to comply with a lawful order.

LAW
There is no need to recite the administrative steps taken in the process of investigating Knebel, or the precise regulations. All administrative proceedings accorded her due process.
Knebel claims a 5th and 6th Amendment right under the United States Constitution, and a 26th Amendment right under our Constitution not to take the test. Also, she states thee was no grant of immunity from criminal prosecution, the city was without power to grant such immunity, and therefore, she had a constitutional right to refuse to take the polygraph test.
On June 30, 1981, Knebel was advised of her rights under the following form which she and Giraud signed:
1. You have no right to remain silent. You have an obligation to truthfully answer questions put to you. You are advised that your statements or responses constitute an official police report.
2. If you refuse to answer questions put to you, you will be ordered by a superior officer to answer the question.
3. If you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the Rules and Regulations of the Biloxi Police Department 30.18 and will serve as a basis for which your discharge will be sought.
4. You are further advised that by law any admission made by you during the course of this hearing, interrogation or examination cannot be used against you in a subsequent criminal proceeding. [Emphasis added]
In Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), police officers being questioned by the state attorney general's office were told they did not have to answer any questions and anything they said could be used against them. They were also told refusal to talk would subject them to removal from office. They talked; they were prosecuted; their statements were used against them at trial.
The U.S. Supreme Court held the statements were coerced and inadmissible. "The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." [385 U.S. at 497, 87 S.Ct. at 618, 17 L.Ed.2d at 565]
The court then held the method of obtaining the statements precluded their use in a criminal proceeding.
In Gardner v. Uniformed Sanitation Men, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), the court considered whether a city could fire an employee who had been subpoenaed for a grand jury and who refused to sign a waiver of his 5th Amendment right. The court held the discharge invalid.
While the Supreme Court in Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), held that an architect who refused to sign a waiver of immunity from prosecution could not for such reason have his public contract cancelled, or be prevented from doing business with the state, the court also observed:
We should make clear, however, what we have said before. Although due regard for the Fifth Amendment forbids the State to compel incriminating answers from its employees and contractors that may be used against them in criminal proceedings, the Constitution permits *1040 that very testimony to be compelled if neither it nor its fruits are available for such use. Kastigar v. United States [406 U.S. 441, 32 L.Ed.2d 212, 92 S.Ct. 1653 (1972)], supra. Furthermore, the accommodation between the interest of the State and the Fifth Amendment requires that the State have means at its disposal to secure testimony if immunity is supplied and testimony is still refused. This is recognized by the power of the courts to compel testimony, after a grant of immunity, by use of civil contempt and coerced imprisonment. Shillitani v United States, 384 US 364, 16 L Ed 2d 622, 86 S Ct 1531 (1966). Also, given adequate immunity, the State may plainly insist that employees either answer questions under oath about the performance of their job or suffer the loss of employment... . [414 U.S. at 84, 94 S.Ct. at 325, 38 L.Ed.2d at 285-286]
Since Garrity holds that a statement, given by a police officer about his official conduct under questioning from state authorities under threat that if he does not answer he will be fired, is inadmissible into evidence in a criminal proceeding against the officer, it follows that a statement given under the promise that it will not be used against him in a criminal proceeding is likewise inadmissible. This follows, not from the authority of the interrogator to make such promise, but the very nature of the 5th Amendment as stated in Confederation of Police v. Conlisk, 489 F.2d 891, 894, Note 4 (7th Cir.1973) cert. denied sub nom. Rochford v. Confederation of Police, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974):
Appellants argue that the IAD is not empowered to grant immunity from prosecution to the police officers. Such a power, however, is not necessary. In Garrity the Supreme Court indicated that the Fifth Amendment itself prohibited the use of statements or their fruits where the statements had been made under threat of dismissal from public office. Therefore, by advising the officers that their statements, when given under threat of discharge, cannot be used against them in subsequent criminal proceedings, the IAD is not "granting" immunity from prosecution; it is merely advising the officers of the constitutional limitations on any criminal prosecution should they answer.
Constitutional rights and limitations are at stake here. It is therefore pertinent that we answer the effect of any such statement given in the event of a future criminal prosecution. The literal promise given Knebel was that any statement she gave would not be used against her in a criminal prosecution. The promise went no further than this. But what about the fruits of such a statement, such as leads to other witnesses or physical evidence located thereby? Would such a promise likewise preclude the state from use of the fruits of such statement? It would. See: Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, p. 1085, 20 L.Ed.2d 1082: "Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution... ." Also, see Lefkowitz v. Turley, quoted supra; Confederation of Police v. Conlisk, quoted supra; and Sanitation Men Association, Inc. v. Commissioner of Sanitation, 426 F.2d 619, 627 cert. denied 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972).
In order to justify questioning, the promise need not, nor does it grant the questioned officer blanket immunity from prosecution of a matter being investigated. It extends only to preventing the state's use either of the statement or its fruits in a subsequent criminal proceeding. To hold a statement affords blanket immunity would extend the 5th Amendment further than the rights it grants. See: Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of New York, 426 F.2d 619 (1970).[1]
In Garrity, the Supreme Court quoted Justice Holmes: "The petitioner ... has no constitutional right to be a policeman ... *1041 the servant cannot complain, as he takes employment on the terms which are offered him. On the same principle, the city may impose any reasonable condition upon holding offices within its control."
Under the facts of this case, it was reasonable to require Knebel to take a polygraph test restricted to her involvement in illegal drugs under investigation. She had no constitutional right to refuse, and her refusal justified her dismissal.
It follows that the judgment of the Circuit Court should be affirmed.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.
NOTES
[1] Counsel for Knebel is correct that the City of Biloxi has no authority to grant immunity from state prosecution, and certainly not federal prosecution. In the above cited case, Judge Friendly of the 2d Circuit distinguishes between "use immunity" and "transactional immunity." When investigating authorities require an officer to give a statement with a promise it will not be used against him, by virtue of the 5th Amendment neither the statement nor its fruits can be used in any subsequent state or federal prosecution. It's use is forbidden. But, to give immunity from prosecution for the transaction under investigation, this must come by a statute granting transactional immunity under the circumstances, or from an official or government agency with such authority. As we note in this opinion, "transactional immunity" is not necessary in order to require an officer to answer questions or be dismissed. Judge Friendly's opinion is an excellent study of the questions presented in this case. See also Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).