ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Harrison County Circuit Court found Weldon Leagea guilty of capital murder. The jury was not able to unanimously agree on the sentencing verdict, so the circuit court sentenced Leagea to life in the custody of the Mississippi Department of Corrections (MDOC).[1] Leagea appeals and claims the *186 circuit court erred when it refused his proposed jury instructions that would have allowed the jury to find him guilty of simple murder or being an accessory after the fact. We find that the circuit court did not err when it refused Leagea’s proposed jury instructions. Finding no error, we affirm the circuit court’s judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. During October 2007, James Yale Johnson and a group of friends traveled from Arkansas to the Isle of Capri Casino in Biloxi, Mississippi. Johnson and his friends planned a golf trip, but when Johnson did not meet his friends one morning, they asked hotel security to check his room. Johnson was found dead in his hotel room. He had been shot twice. There were also signs that there had been a struggle in the room. The phone had been ripped out of the wall, and blood was spattered on the wall. Hotel security reported Johnson’s death to the Biloxi Police Department.
¶ 8. Investigators from the police department found a note on the night stand in Johnson’s hotel room. The note said “Chana,” and “963.” There was also a phone number on the note. The phone number was the last number dialed from Johnson’s phone. A review of the hotel’s security footage led authorities to Leagea, who had checked into room 968 a few days earlier. When investigators searched room 963, they found a phone bill for the phone number that was written on the note that was found in Johnson’s hotel room. The Biloxi Police Department placed an alert on the National Crime Information Center’s database for other law-enforcement agencies to be on the lookout for Leagea.
¶ 4. Leagea was found in Oakdale, Louisiana. When Leagea’s car was searched, officers recovered the same t-shirt and hat that he had been wearing in the hotel’s security footage. A short time later, Cha-na Wells was apprehended in Baton Rouge, Louisiana. Wells gave a statement and reported that she had not known Leagea long when she agreed to travel with him. Wells and Leagea left Baton Rouge and drove to the casino. Wells also told authorities that Leagea had gambled and lost his money. Leagea told Wells to find a “duck” — someone who would be willing to pay her for sex — because he did not have enough money to drive back to Baton Rouge. A short time later, Wells met Johnson on a hotel elevator. According to Wells, Johnson asked her whether she was “working.” Wells went with Johnson to his hotel room, where they smoked marijuana, and Johnson received oral sex from Wells. Johnson gave her $100 for the oral sex, and an extra $26 so Wells could buy a “cold drink.” At Johnson’s request, Wells gave him her room number. She also gave Johnson the number to Leagea’s cell phone. Wells gave the $100 to Leagea so he could try to “double it up” at the casino. She kept the $26 for herself.
¶ 5. The next evening, Wells called Johnson and asked if she could smoke more of his marijuana. Johnson agreed. As Wells was on her way to Johnson’s room, she encountered Leagea. Wells agreed that after Johnson let her in his hotel room, she would let Leagea into Johnson’s hotel room so Leagea could rob Johnson. Next, Johnson let Wells in his hotel room. Leagea waited in the hallway while Wells performed oral sex on Johnson again. Afterward, Wells let Leagea into Johnson’s room. Armed with a pistol,[2] Leagea de *187 manded money from Johnson. When Johnson did not immediately comply, Leagea hit Johnson with the pistol. When Johnson attempted to run out of the hotel room, Leagea shot Johnson twice in the back. Leagea and Wells fled the hotel and left Biloxi.
¶ 6. Security footage corroborated the fact that Leagea got off of the elevator on the fourth floor of the hotel, where Johnson’s hotel room was located. Security footage also captured Leagea leaving the hotel. A witness who was staying on the fourth floor of the hotel saw a man who he described as approximately the same size as Leagea in the hallway near Johnson’s hotel room shortly before Johnson was killed. The witness explained that the man he saw was acting suspiciously in that he was walking very slowly, and he turned around and walked away when the witness saw him. The witness did not see Leag-ea’s face, but he accurately described Leagea’s clothing.
¶ 7. Leagea was indicted for capital murder. He went to trial from July 20-24, 2011. Before Leagea’s trial, Wells pled guilty to armed robbery. She was sentenced to twenty years in the custody of the MDOC. Wells testified against Leagea. The prosecution also called Investigator Michael Brown of the Biloxi Police Department, who testified regarding the investigation of Johnson’s death and the apprehension of Wells and Leagea. Dr. Paul McGarry testified that he performed Johnson’s autopsy. Otherwise, the prosecution called a member of the hotel’s security staff as a witness, and a hotel guest who saw Leagea acting suspiciously in the hallway in the vicinity of Johnson’s hotel room.
¶ 8. During the jury-instructions conference, the circuit court refused Leagea’s requests to instruct the jury that it could convict him of simple murder or as an accessory after the fact. As previously mentioned, the jury found Leagea guilty of capital murder, but the jury was not able to unanimously agree on Leagea’s sentence. As a result, the circuit court sentenced Leagea to life in the custody of the MDOC. Following unsuccessful post-trial motions for a judgment notwithstanding the verdict or a new trial, Leagea appeals. He claims the circuit court erred when it refused his proposed jury instructions on simple murder and accessory after the fact.
STANDARD OF REVIEW
¶ 9. When confronted with issues concerning whether a circuit court erred when it refused a defendant’s jury instructions, “we are required to read and consider the jury instructions as a whole.... ” Brown v. State, 39 So.3d 890, 897 (¶ 27) (Miss.2010). “[J]urors must be given appropriate instructions [that] fairly announce the law applicable to the case so as not to create an injustice against the defendant.” Id. at 897-98 (¶ 27). Although a defendant is entitled “to present his theory of the case to the jury via appropriately worded jury instructions,” the circuit court may refuse an instruction that is not supported by the evidence. Id. at 898 (¶ 27). The circuit court may also refuse an instruction that contains an incorrect statement of law. Id. Finally, the circuit court may refuse an instruction that is *188 covered in other instructions given to the jury. Id.
ANALYSIS
I. MURDER INSTRUCTION
¶ 10. Leagea claims the circuit court erred when it refused to instruct the jury that it could find him guilty of simple murder instead of capital murder. Proposed instruction D-l would have given the jury the option to convict Leagea of simple murder. And proposed instruction D^4 states, “if you find beyond a reasonable doubt that ... Leagea killed a human being with deliberate design to cause his death but that the killing was not done during the commission of a robbery then you may find the defendant guilty of murder.” The circuit court found that there was no evidence to support the conclusion that Leagea was guilty of simple murder. According to Leagea, “[b]y denying the requested instructions, the trial court deprived the jury of the opportunity to properly consider whether [he] should have been convicted of the lesser-included offense of murder.” Leagea also argues that the circuit court’s refusal of proposed instructions D-l and D-4 deprived him of his defense that Johnson was not killed during a robbery. Finally, Leagea argues that the circuit court’s “failure to instruct the jury on murder, as a lesser-included offense of capital murder, acted as a peremptory instruction on the underlying felony of robbery in the capital murder.”
¶ 11. Defendants have “an absolute right to have the jury instructed on lesser-included offenses if the evidence supports such an instruction.” Downs v. State, 962 So.2d 1255, 1260 (¶ 22) (Miss.2007). And “[d]efendants are entitled to have instructions on their theory of the case presented to the jury for which there is foundation in evidence, even though the evidence might be weak, insufficient, inconsistent, or of doubtful credibility.” Welch v. State, 566 So.2d 680, 684 (Miss.1990). “The merits of a defense theory fall within the purview of the jury to determine.” Lenard v. State, 51 So.3d 239, 249 (¶ 32) (Miss.Ct.App.2011).
¶ 12. In support of his argument, Leag-ea notes Wells’s testimony that Leagea demanded money from Johnson and told her to search Johnson’s room for money. Leagea further notes Wells’s testimony that Johnson offered to give Leagea money if he would leave without Wells. Finally, Leagea draws our attention to the fact that approximately $3,000 was discovered in Johnson’s room after he was killed. We interpret Leagea to argue that the jury could have found that Leagea did not kill Johnson during the course of a robbery because Leagea and Wells did not take all of Johnson’s money before they fled the scene.
¶ 13. Mississippi’s “armed[-]robbery statute includes ‘attempt,’ therefore a conviction based on armed robbery does not require that there be an actual taking.” Croft v. State, 992 So.2d 1151, 1159 (¶ 33) (Miss.2008). There was ample evidence that Leagea attempted to rob Johnson. Wells testified that she and Leagea had a conversation before she went into Johnson’s hotel room for the second time. According to Wells, Leagea said “that he needed to rob” Johnson. Leagea told Wells “when you come out [of Johnson’s hotel room], I’m going in.” After performing oral sex on Johnson, Wells let Leagea into Johnson’s hotel room. Leag-ea demanded that Johnson surrender his money. Wells testified that Leagea hit Johnson “in the head with the gun.” As Leagea was hitting Johnson, Leagea demanded that Johnson reveal where his money was.
¶ 14. “Instructions are not given unless [they are] supported by the evi *189 dence.” Ellis v. State, 778 So.2d 114, 118 (¶ 15) (Miss.2000). There was no evidence to contradict the testimony that Leagea went into Johnson’s hotel room to rob him. And there was no evidence that Leagea simply planned to kill Johnson without robbing him. Leagea chose not to testify. We do not hold his decision to exercise his constitutional right to remain silent against him. We merely note that he did not offer any of his own testimony to contradict the evidence against him. If the jury disregarded Wells’s testimony that Leagea attempted to rob Johnson, the jury would have been obligated to find Leagea not guilty of capital murder. We find that the circuit court acted within its discretion when it refused proposed instructions D-l and D-4 because there was no evidence to support them. This issue is without merit.
II. ACCESSORY-AFTER-THE-FACT INSTRUCTION
¶ 15. Leagea claims the circuit court erred when it refused proposed instruction D-2, which states:
The Court instructs the jury that the crime of “accessory after the fact” is committed when a person conceals, receives, relieves, aids[,] or assists any person, knowing that such person has committed a felony, with [the] intent to enable such person to escape or avoid arrest, trial, conviction[,] or punishment, after the commission of such felony.
For you to find ... Leagea guilty of this crime, you must be convinced that the prosecution has proved each of the following beyond a reasonable doubt:
First: That the crime of murder was committed;
Second: That ... Leagea knew of the commission of the above crime and thereafter aided or assisted the perpetrator by driving him from the scene of the offense; and
Third: That ... Leagea did the above act or acts intending to hinder the apprehension, arrest, trial[,] or punishment of another.
If you find all of the above facts[,] you may find ... Leagea guilty of the crime of accessory after the fact.
The circuit court refused proposed instruction D-2 because there was no evidence to support it. According to Leagea, the “jury could have believed that Wells committed the crime alone, and that Leagea merely helped her escape the [c]asino and authorities.” To support his argument, Leagea notes that Wells admitted that she wanted to make money so she could travel back to her home. Leagea also notes that Wells admitted that she contacted Johnson a second time because she wanted to get more money from him. Leagea argues that “[w]hile the evidence may be meager in support of this instruction, [he] had an absolute right to have the jury instructed on accessory after the fact.”
¶ 16. Essentially, Leagea argues that he was entitled to a lesser non-ineluded-offense instruction. “[A] lesser non-included offense applies where there is evidentiary support that a defendant is guilty of a lesser charge arising from the same nucleus of operative facts.” Green v. State, 884 So.2d 733, 737 (¶ 12) (Miss.2004). A circuit court can only give a lesser-offense instruction if there is evidence to support it. Williams v. State, 53 So.3d 734, 741 (¶ 33) (Miss.2010). A lesser-offense instruction must be refused if the circuit court finds that “taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences that may be drawn from the evidence in favor of the accused, that no hypothetical jury could find the fact as the accused suggests.” Id. at (¶ 34).
¶ 17. A person is guilty as an accessory after the fact if he “concealed, *190 received, or relieved any felon, or having aided or assisted any felon, knowing that the person had committed a felony, with intent to enable the felon to escape or to avoid arrest, trial, conviction or punishment after the commission of the felony_” Miss.Code Ann. § 97-1-5(1) (Supp.2012). “One cannot be both a principal in the crime and an accessory after the fact.” Mangum v. State, 762 So.2d 337, 343 (¶ 16) (Miss.2000). Proposed instruction D-2 would have only been appropriate if there was evidence that Wells killed Johnson and Leagea acted to help Wells avoid being punished for killing Johnson. Viewing the evidence in the light most favorable to Leagea, there was no evidence that Wells killed Johnson. Wells testified that Leagea shot Johnson twice in the back. As we mentioned previously, Leagea chose not to testify. It follows that there was no evidence that Leagea acted to help Wells avoid being punished for killing Johnson. Therefore, there was no evidence to support proposed instruction D-2. Consequently, we find that the circuit court did not err when it refused proposed instruction D-2. There is no merit to this issue.
¶ 18. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. According to Mississippi Code Annotated section 47 — 7—3( 1 )(f) (Rev.2011), Leagea is not *186 eligible for parole.

. Wells owned a semi-automatic .22 caliber pistol, but it was not registered to her. She *187 testified that she took her pistol on her trip with Leagea because she had only recently met him. Wells also testified that Leagea removed the pistol from her bag while they were staying at the casino hotel. According to Wells, after she and Leagea fled the scene of Johnson’s murder, Leagea gave her the pistol and told her to throw it out of the passenger-side window of his car. Wells complied. She claimed the pistol landed in an unspecified body of water.